UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
                                  :
                                  :
                                  :
IN RE APPLICATION OF ATHENE HOLDING LTD :
FOR JUDICIAL ASSISTANCE PURSUANT TO 28     :        MISC. CASE NO. 23-mc-00171
U.S.C. § 1782                              :
                                  :
                                  :
                                  :
                                  :
                                  :
------------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF
## APPLICATION FOR JUDICIAL ASSISTANCE
## PURSUANT TO 28 U.S.C. § 1782

Steven M. Pesner, P.C.
Philippe Adler
Alex D. Levi
FRIEDMAN KAPLAN SEILER
  ADELMAN & ROBBINS LLP
7 Times Square
New York, NY 10036-6516
(212) 833-1112
spesner@fklaw.com
padler@fklaw.com
alevi@fklaw.com

May 22, 2023                    Attorneys for Applicant Athene Holding Ltd

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 4

    A.  Background ................................................................................................... 4

    B.  The Current Application ............................................................................... 9

ARGUMENT ....................................................................................................................... 11

    A.  Legal Standard ........................................................................................... 11

    B.  This Application Satisfies Section 1782's Statutory Requirements ........... 11

    C.  This Court's Analysis of Section 1782's Discretionary Factors Should Guide It to Granting This Application ................................................................... 13

CONCLUSION .................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Accent Delight Int'l Ltd.*,
   2018 WL 2849724 (S.D.N.Y. June 11, 2018) ........................................................................14

*In re Accent Delight Int'l Ltd.*,
   791 F. App'x 247, 251 (2d Cir. 2019) ................................................................................15

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
   785 F. Supp. 2d 434 (S.D.N.Y. 2011)..........................................................................14, 18

*In re Application of Malev Hungarian Airlines*,
   964 F.2d 97 (2d Cir.1992)...............................................................................................13, 15

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012)..............................................................................................11, 12

*Conopco, Inc. v. Wein*,
   2007 WL 1040676 (S.D.N.Y. Apr. 4, 2007)........................................................................16

*In re Edelman*,
   295 F.3d 171 (2d Cir. 2002)................................................................................................12

*In re Escallon*,
   323 F. Supp. 3d 552 (S.D.N.Y. 2018)..................................................................................12

*Esses v. Hanania*,
   101 F.3d 873 (2d Cir. 1996)...........................................................................................12, 13

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ......................................................................................................12, 14

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015)......................................................................................12, 14, 15

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*,
   376 F.3d 79 (2d Cir. 2004)..................................................................................................13

*Trib. Co. v. Purcigliotti*,
   1996 WL 337277 (S.D.N.Y. June 19, 1996) ......................................................................16

*Weissman v. Fruchtman*,
   1986 WL 15669 (S.D.N.Y. Oct. 31, 1986) ........................................................................16

*Young v. Chem. Bank, N.A.*,
     1988 WL 130929 (S.D.N.Y. Dec. 1, 1988) ............................................................................14

**Statutes**

28 U.S.C. § 1782 .......................................................................................................... *passim*

## PRELIMINARY STATEMENT

Athene Holding Ltd ("Athene") seeks an Order, pursuant to 28 U.S.C. § 1782, directing Ming Dang ("Dang"), who, upon information and belief, resides in the Southern District of New York, to produce discovery important to Athene's claims in an action pending in the Supreme Court of Bermuda (the "Bermuda Action") against Imran Siddiqui, Stephen Cernich and Caldera Holdings Ltd (the "Bermuda Defendants").  Dang, who is not a party to the Bermuda Action, while working with the Bermuda Defendants to compete with Athene, misappropriated and used Athene's confidential, proprietary, and commercially sensitive documents and information to Athene's detriment.  Dang has produced documentary evidence of this misconduct and given testimony in two separate actions brought in New York by Dang's former employer, Apollo, which was a large shareholder of and advisor to Athene at the time (defined *infra* p. 4).  Athene brings this Section 1782 application to obtain those documents and transcripts of that testimony from Dang for use in the Bermuda Action.

On May 3, 2018, Athene filed a Specially Indorsed Writ of Summons against the Bermuda Defendants commencing the Bermuda Action (Taylor Decl. ¶ 4).[1]  In the Operative Writ, Athene alleges that, *inter alia*, Siddiqui and Cernich, a former director and senior officer of Athene, respectively, misappropriated Athene's confidential, proprietary, and commercially sensitive documents and information for the Bermuda Defendants to use in competing with Athene in violation of fiduciary duties and duties of confidence that Siddiqui and Cernich each owed to Athene under Bermuda law (Taylor Decl., Ex. A (Operative Writ), ¶¶ 1-12).

---

[1] As explained in the Taylor Declaration, the Specially Indorsed Writ of Summons has undergone several amendments since it was filed in 2018 (Taylor Decl. ¶ 4).  The present operative writ is attached to the Taylor Declaration as **Exhibit A** (the "Operative Writ") (*id.*).

Dang, who is <u>not</u> a party to the Bermuda Action, played an essential role in the Bermuda Defendants' misappropriation and use of Athene's confidential, proprietary, and commercially sensitive documents and information (*id.* ¶¶ 42-44).  Dang, as an Apollo employee, had access to confidential, proprietary, and commercially sensitive documents and information belonging to Athene (*id.* ¶ 27).  Dang abused this access, transmitting Athene documents and information outside of Apollo and Athene to the Bermuda Defendants for their benefit (Taylor Decl., Ex. B (Final Arbitration Award) at 10 (described *infra*)).

Apollo pursued a JAMS arbitration against Dang, Siddiqui and Caldera for their disloyalty and misappropriation of information, prevailed on liability on multiple claims, and was awarded compensatory and punitive damages (the "JAMS Arbitration") (*id.* at 21-23).  Dang's misconduct was brought out in the JAMS Arbitration, and the arbitrator who presided over the JAMS Arbitration (the "JAMS Arbitrator") found in the Final Arbitration Award, attached to the Taylor Declaration as **Exhibit B**, that, among other things, Dang "committed multiple serious violations" of Apollo's Code of Conduct; Dang "engaged in intentional misconduct and committed fraud" during his involvement with the Bermuda Defendants; Dang's misappropriation of information was "impossible to justify"; and Dang lacked a "moral compass" (Taylor Decl., Ex. B (Final Arbitration Award) at 7, 10, 20).  Indeed, the JAMS Arbitrator found that Dang played a critical role in Siddiqui's misconduct:

> Dang substantially assisted in Siddiqui's breach [of Siddiqui's fiduciary duties owed to Apollo] by providing considerable assistance to Siddiqui in drafting models and decks for Caldera.  He helped conceal Siddiqui's involvement by modifying documents. He prepared documents used to solicit investors, and he was involved actively in Caldera's attempts to acquire a company that Athene also was seeking to acquire.

*Id*. at 14.

The Final Arbitration Award was confirmed by an Order of the Supreme Court of the State of New York, County of New York on March 30, 2022, and no appeal was filed (Pesner Decl. ¶ 6).

Dang produced documents in the JAMS Arbitration that evidently featured prominently in Apollo's presentation to the JAMS Arbitrator (Taylor Decl. ¶ 10).  Dang reproduced those same documents in an action commenced by Apollo in 2020 in the Supreme Court of the State of New York, County of New York, against Cernich and a former employee of an Athene subsidiary who also was involved in Caldera and/or its predecessor(s) (Taylor Decl. ¶ 11; Pesner Decl., Ex. 1 (Davidian Aff.) ¶20) (the "New York Action").

Through this Application, Athene seeks the documents that Dang produced in the JAMS Arbitration and the New York Action (*id.* ¶ 8).  Athene also seeks the production of transcripts of Dang's deposition and trial testimony from the JAMS Arbitration and deposition and any other testimony given by Dang in the New York Action (*id.*).  To a large extent, Apollo's claims in the JAMS Arbitration and New York Action are predicated on some of the same or similar acts that also form the basis for Athene's claims in the Bermuda Action, such as, for example, the misappropriation and use of Athene's confidential, proprietary, and commercially sensitive documents and information (*see* Taylor Decl., Ex. B (Final Arbitration) at 6-16).  Thus, Dang's document production in the JAMS Arbitration, which was reproduced in the New York Action, and his testimony in both of those actions, are relevant to and probative of Athene's claims in the Bermuda Action (Taylor Decl. ¶¶ 7, 10, 14).

Moreover, Dang can claim no burden that he would suffer as a result of this Court granting this Application.  Nor can Dang identify anything preventing his production of the materials for use in the Bermuda Action that he previously produced in the JAMS Arbitration and/or the New

York Action, or his production of discrete transcripts from those proceedings.  In fact, in the Bermuda Action, Athene requested that the Bermuda Defendants produce all discovery produced by Dang in the JAMS Arbitration (*id.* ¶ 11).  The Bermuda Defendants refused this request and argued that Athene should pursue this discovery from Dang directly under 28 U.S.C. § 1782 (*id.* ¶¶ 11, 12-13).  That is what Athene is doing now.[2]

Athene respectfully requests an Order, pursuant to 28 U.S.C. § 1782, directing Dang to produce the documents that he produced in the JAMS Arbitration and the New York Action, as well as the transcripts of his deposition or trial testimony in the JAMS Arbitration and the New York Action.

## STATEMENT OF FACTS

### A.    Background

Athene is a corporation established and existing pursuant to the laws of Bermuda (Taylor Decl, Ex. A (Operative Writ) ¶ 13).  Through its subsidiaries, Athene is a retirement services company that issues, reinsures and acquires retirement savings products (*id.* ¶¶ 13, 17).  Siddiqui was a member of Athene's Board of Directors (the "Board") from 2009 through March 20, 2017, when he resigned (*id.* ¶ 14).  Cernich worked at Athene from 2009 until June 30, 2016, when he resigned (*id.* ¶ 15).  Cernich served as an officer of Athene, and, at the time of his resignation, held the title of Executive Vice President, Corporate Development (*id.*).

During the period in which Siddiqui was a director of Athene and Cernich was an officer of Athene, Apollo Global Management, Inc. (collectively with certain of its present and former subsidiaries and affiliates, excluding Athene and its subsidiaries, "Apollo")—held approximately

---

[2] Athene is also continuing to pursue the production of this discovery by the Bermuda Defendants in the Bermuda Action (*see* Taylor Decl. ¶ 13; *see also infra* p. 10).

17% of Athene's shares and appointed six of the 15 members of Athene's Board, including Siddiqui, who was a partner at Apollo while he served on the Board (*id.* ¶ 26). The shares of Athene stock held by Apollo conferred upon it voting rights in respect of 45% of Athene's voting shares (*id.*). In addition, Athene contracted with Apollo for investment management services (*id.*). In its role as an investment adviser to Athene, Apollo had access to Athene's confidential, proprietary, and commercially sensitive documents and information (*id.* ¶ 27). Given the importance of these documents and information to Athene, Apollo took steps to safeguard their confidentiality (*id.*).

From 2011 until October 26, 2018, Apollo employed Dang (Taylor Decl., Ex. B (Final Arbitration Award) at 7, 10, 14).

In July 2016, if not before, Siddiqui, while still serving on Athene's Board, began to work with Cernich to develop a business plan to compete with Athene (Taylor Decl., Ex. A (Operative Writ) ¶ 44; Taylor Decl., Ex. B (Final Arbitration Award) at 7). This led to the formation of Caldera (Taylor Decl., Ex. B (Final Arbitration Award) at 7). Siddiqui and Cernich incorporated Caldera in Bermuda in July 2017 (Taylor Decl., Ex. A (Operative Writ) ¶ 16). Siddiqui and Cernich are each a director, shareholder and/or beneficial owner of Caldera, and together they control Caldera (*id.*). Siddiqui and Cernich founded Caldera with the intention of competing directly with Athene (*id.* ¶ 42; Taylor Decl., Ex. B (Final Arbitration Award) at 8-9, 15). From early on, Dang was involved in the venture that ultimately became Caldera (Taylor Decl., Ex. B (Final Arbitration Award) at 7).

At least as early as July 2016, Siddiqui began misappropriating and distributing to Cernich, Dang and others confidential, proprietary, and commercially sensitive Athene and Apollo documents and information (*id.* at 8, 14). Dang, while an Apollo employee, also misappropriated

5

confidential, proprietary, and commercially sensitive Athene and Apollo documents and information for the Bermuda Defendants' benefit (*id.* at 9-10).   In addition to these misappropriations, Dang's work on behalf of Caldera included developing models as well as slide decks and other documents used to solicit investors for Caldera (*id.* at 14-15).   Dang prepared at least some of these documents using confidential, proprietary, and commercially sensitive documents and information misappropriated from Athene and/or Apollo (*id.* at 8, 14).

On May 3, 2018, Apollo commenced the JAMS Arbitration against Siddiqui, alleging, *inter alia*, that Siddiqui had engaged in the wrongful use and disclosure of Apollo's confidential, proprietary, and commercially sensitive documents and information in violation of a settlement agreement between Siddiqui and Apollo (*id.* at 2).[3]  In November 2018, after learning about Dang's involvement with Siddiqui and the existence of Caldera, Apollo commenced a second, separate JAMS arbitration against Siddiqui, Dang and Caldera, which the parties agreed to consolidate with the JAMS Arbitration (*id.* at 2-4, 10).

Dang produced documents and was deposed during the JAMS Arbitration, and, in March 2019, Dang testified at the hearing in that case (Taylor Decl. ¶ 8; Taylor Decl., Ex. B (Final Arbitration Award) at 5, 7).   It appears that some of the documents that Dang produced in the JAMS Arbitration were used by Apollo as exhibits during the hearing to prove its case against Siddiqui, Dang and Caldera (Taylor Decl. ¶ 10).

---

[3] Apollo previously had filed a JAMS arbitration against Siddiqui in early 2018 (Taylor Decl., Ex. B (Final Arbitration Award) at 2, 9).  In that arbitration, Apollo alleged that Siddiqui violated his post-employment restrictive covenants to Apollo (*id.* at 2).  As of the commencement of that arbitration, Siddiqui had not disclosed Caldera's existence or Dang's involvement with Caldera to Apollo (*id.* at 10).  In February 2018, Siddiqui and Apollo settled that arbitration (*id.* at 9).  Athene was not a party to that arbitration and the settlement agreement did not release any claims by Athene, nor did it release any claims by Apollo related to conduct on or after February 21, 2018 (*id.* at 2, 3, 4; Pesner Decl. ¶ 5).

In the Bermuda Action, the Bermuda Defendants produced the discovery that **Siddiqui** and **Cernich** produced in the JAMS Arbitration,[4] and all of the transcripts from the JAMS Arbitration, **except** for transcripts of Dang's testimony (*id.* ¶ 9).  Apollo also produced in the Bermuda Action all the documents that **Apollo** produced in the JAMS Arbitration (*id.*), which did not include the Dang transcripts.  But the Bermuda Defendants refused to produce in the Bermuda Action the documents that **Dang** produced in the JAMS Arbitration, or the deposition or hearing testimony that Dang gave in the JAMS Arbitration (*id.* ¶¶ 9, 11) (all discovery produced by Dang in the JAMS Arbitration, including his deposition and hearing testimony, is referred to hereafter as the "JAMS Dang Discovery").

On April 26, 2019, the Final Arbitration Award was issued in the JAMS Arbitration finding Siddiqui, Dang and Caldera liable for several of the claims brought by Apollo.  The JAMS Arbitrator found Dang liable for fraud, breach of fiduciary duties owed to Apollo, aiding and abetting Siddiqui in his breach of fiduciary duties owed to Apollo, breach of contract and acting as a faithless servant (Taylor Decl., Ex. B (Final Arbitration Award) at 21-23).  The JAMS Arbitrator found that:

a)   Dang "energetically sought to become involved" in the Bermuda Defendants' business and his involvement in that business was "comprehensive" (*id.* at 14, 15).

b)   Dang worked "surreptitiously" with Siddiqui and Cernich to launch their new business venture to compete with Apollo and Athene (*id.* at 8).

c)   Dang was "actively" involved in efforts to solicit Apollo and Athene investors "to invest in Caldera to the detriment of Apollo and Athene" (*id.* at 8, 14-15).  Dang suggested to Siddiqui and Cernich that, when soliciting investments for Caldera, they should "emphasize" that Caldera had a competitive edge over Athene, which the JAMS Arbitrator described as "disloyal to say the least" (*id.* at 9-10).

---

[4] The Bermuda Defendants have stated in correspondence with Athene's Bermuda counsel that they have produced to Athene in the Bermuda Action all the documents produced by Siddiqui and Cernich in the JAMS Arbitration except those withheld on the bases of relevance and privilege (Taylor Decl. ¶ 9, n.3).  However, the Bermuda Defendants have not confirmed that they have ***actually*** withheld any documents on those grounds in the Bermuda Action (*see id.*).

d)      Dang "was involved actively in Caldera's attempts to acquire a company that Athene also was seeking to acquire" (*id.* at 8, 14).  To this end, Dang misappropriated "highly confidential" documents and information from Apollo related to the target company that reflected Apollo and Athene's bid price for that company (*id.* at 10).  Dang transmitted the documents and information through a personal Google-based email account outside of Apollo's network, which the JAMS Arbitrator described as "impossible to justify" (*id.*).

e)      Dang "substantially assisted" in Siddiqui's breach of the duties that Siddiqui owed to Apollo (*id.* at 14).

f)      Siddiqui and Dang took "[m]any active steps . . . to hide their involvement" with Caldera while they were Apollo employees and while Siddiqui was an Athene Board member, which included Dang "modifying documents" (*id.* at 8, 14).

g)      Dang "committed multiple serious violations" of the Apollo Code of Conduct, and "engaged in intentional misconduct and committed fraud" during his involvement with the Bermuda Defendants (*id.* at 20).

h)      Dang gave testimony during the JAMS Arbitration hearing that "reflected a lack of a moral compass" (*id.* at 7).

The JAMS Arbitrator awarded Apollo $1 million as compensatory damages for its claims against Dang, representing approximately half of the compensation that Dang received from Apollo during the time that he surreptitiously was working with the Bermuda Defendants against Apollo and Athene's interests (*id.* at 19-20, 22).  The JAMS Arbitrator also allowed Apollo to reduce Dang's equity interests in Apollo to zero (*id.* at 20, 22).

The JAMS Arbitrator also held Siddiqui and Caldera jointly and severally liable for compensatory damages, imposed $150,000 in **punitive** damages against Siddiqui, and enjoined the respondents to the JAMS Arbitration from further disclosing or using Apollo's confidential information (*id.* at 22).  On March 30, 2022, without objection from the parties to the JAMS Arbitration, the Supreme Court of the State of New York, County of New York, confirmed the Final Arbitration Award, and no appeal was filed (Pesner Decl. ¶ 6).

In 2020, Apollo commenced the New York Action in the Supreme Court of the State of New York, County of New York, against Cernich and Huan Tseng, a former employee of one of Athene's subsidiaries who was involved in Caldera's attempts to compete against Athene (Taylor Decl. ¶ 8). In the New York Action, Dang testified at a deposition and evidently *reproduced* all of the documents that he originally had produced in the JAMS Arbitration (*id.* ¶ 8, 11; Pesner Decl., Ex. 1 (Davidian Aff.) ¶ 20) (all discovery produced by Dang in the New York Action, including his deposition and any other testimony given therein, is referred to hereafter as the "New York Dang Discovery"). The New York Action is still pending trial, and so there has not been any trial testimony in that matter yet (Taylor Decl. ¶ 8 n.2).

**B.      The Current Application**

Athene repeatedly has sought the JAMS Dang Discovery from the Bermuda Defendants in the Bermuda Action (*id.* ¶ 11). In refusing to produce the JAMS Dang Discovery, the Bermuda Defendants have argued that a confidentiality stipulation signed by Siddiqui and Apollo during the JAMS Arbitration, under which Siddiqui and Apollo agreed that they would not disclose documents marked confidential and produced in the JAMS Arbitration without the consent of the disclosing party or permission from the JAMS Arbitrator (the "Confidentiality Stipulation"), barred their production of the JAMS Dang Discovery in the Bermuda Action (*id.* ¶¶11-12; *see also* the Confidentiality Stipulation, attached as **Exhibit C** to the Taylor Decl.; and *see also* Letter from counsel for the Bermuda Defendants to Kevin Taylor and Nick Howard, counsel for Athene (Nov. 8, 2022), attached as **Exhibit D** to the Taylor Declaration (the "Bermuda Defendants' November 8, 2022 Letter")).

The Bermuda Defendants have made this representation even though they have produced in the Bermuda Action, without invoking the Confidentiality Stipulation, **Siddiqui's** and

**Cernich's** (not Dang's) productions from the JAMS Arbitration and all of the JAMS Arbitration transcripts, other than Dang's deposition and hearing transcripts, and even though Apollo has produced in the Bermuda Action the entirety of its (<u>not</u> Siddiqui's, <u>not</u> Cernich's and <u>not</u> Dang's) production from the JAMS Arbitration (Taylor Decl. ¶ 9).  Indeed, the Bermuda Defendants have maintained this position even after Dang's reproduction of his JAMS Arbitration document production, and possibly also his production of his JAMS deposition and hearing transcripts, in the New York Action (*id.* ¶ 11; Pesner Decl., Ex. 1 (Davidian Aff.) ¶ 20).

On January 16, 2023, Athene filed a discovery summons with the Supreme Court of Bermuda seeking an order compelling the Bermuda Defendants to disclose the JAMS Dang Discovery in the Bermuda Action (Taylor Decl. ¶ 13) (the "Discovery Summons").  In opposition to the Discovery Summons, the Bermuda Defendants again asserted that the JAMS Confidentiality Stipulation barred them from producing the JAMS Dang Discovery and stated that Dang had refused to consent to the production of these materials (*id.* ¶¶ 13; *see also* Letter from Katie Tornari, counsel for Siddiqui, to Kevin Taylor and Nick Howard, counsel for Athene (March 17, 2023), attached as **Exhibit E** to the Taylor Declaration (the "Bermuda Defendants' March 17, 2023 Letter") at ¶ 2).  The Bermuda Defendants suggested that Athene pursue the JAMS Dang Discovery by way of a Section 1782 application against Dang directly (Taylor Decl., Ex. E (the Bermuda Defendants' March 17, 2023 Letter) ¶ 5.11).

To attempt to avoid further delay in the Bermuda Action, Athene seeks through this application an Order directing Dang to produce the JAMS Dang Discovery and the New York Dang Discovery (together, the "Dang Discovery" (*see* Taylor Decl. ¶ 8)).  As articulated by the JAMS Arbitrator in the Final Arbitration Award, Dang played an essential and inexcusable role in the Bermuda Defendants' misappropriation of Athene's confidential, proprietary, and

commercially sensitive documents and information in order to use it to compete against Athene (*see generally* Taylor Decl., Ex. B (Final Arbitration Award)). Thus, Athene anticipates that the Dang Discovery will be relevant to Athene's claims in the Bermuda Action, and necessary for Athene and the Supreme Court of Bermuda to understand the full scope of the Bermuda Defendants' wrongdoings (Taylor Decl. ¶¶ 7, 14).

## ARGUMENT

### A. Legal Standard

Under 28 U.S.C. § 1782, a federal district court may assist "interested persons" in obtaining discovery for use in foreign proceedings. Section 1782 states, in relevant part:

> The district court of the district in which a person resides or is found may order him to . . . produce a document or other thing for use in a proceeding in a foreign or international tribunal[.] . . . The order may be made pursuant to . . . the application of any interested person[.]

28 U.S.C. § 1782(a).

"In ruling on an application made pursuant to section 1782, a district court must first consider the statutory requirements and then use its discretion in balancing a number of factors." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). Here, each of the statutory requirements is satisfied and each of the factors that guides this Court's discretion supports granting this Application.

### B. This Application Satisfies Section 1782's Statutory Requirements

By its plain language, Section 1782 establishes three requirements that applicants seeking assistance from the district court must satisfy:

(1)     the person from whom discovery is sought must reside or be found within the district of the court ruling on the application;

(2)     the discovery must be for use in a proceeding before a foreign tribunal; and

(3)   an "interested person" must make the application.

*Brandi-Dohrn*, 673 F.3d at 80; *In re Edelman*, 295 F.3d 171, 175-76 (2d Cir. 2002) (quoting *Esses v. Hanania*, 101 F.3d 873, 875 (2d Cir. 1996)).  All three of the statutory factors are satisfied here.

**First**, on information and belief, including, *inter alia*, a property records search, Dang owns property and lives in New York County (Pesner Decl. ¶ 4), and thus resides and may be found within the Southern District of New York.  *See In re Escallon*, 323 F. Supp. 3d 552, 557 (S.D.N.Y. 2018) (explaining that a person "resides" in a jurisdiction for purposes of Section 1782 when that person has an "established abode" in the jurisdiction).

**Second**, Athene is seeking discovery for use in a foreign proceeding (*i.e.*, the Bermuda Action).  Materials from the JAMS Arbitration that have been produced in the Bermuda Action to date show that the Bermuda Defendants and Dang misappropriated Athene's confidential, proprietary, and commercially sensitive documents and information and used them to compete with Athene (*see* Taylor Decl. ¶¶ 10, 14; *see also* Taylor Decl., Ex. B (Final Arbitration Award)).  In fact, at least some items from the JAMS Dang Discovery appear to have been used by Apollo in the JAMS Arbitration as exhibits during the JAMS Arbitration hearing to prove the liability aspects of Apollo's case against Siddiqui, Dang and Caldera (*id.* ¶ 10).  Thus, the JAMS Dang Discovery, and necessarily some of those documents reproduced in the New York Action, will be relevant to and probative of Athene's allegations and claims in the Bermuda Action (*id.*).  *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) ("The plain meaning of the phrase 'for use in a proceeding' indicates something that will be employed with some advantage or serve some use in the proceeding".).

**Third**, as the plaintiff in the Bermuda Action, Athene is unquestionably an "interested person".  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) ("No doubt

litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782".).

Having satisfied Section 1782's three statutory requirements, Athene respectfully urges the Court to grant this Application.

## C.     This Court's Analysis of Section 1782's Discretionary Factors Should Guide It to Granting This Application

Once the three statutory requirements are met, as they are here, a district court is "free to grant discovery in its discretion." *In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 78 (2d Cir. 1997) (citing *Esses*, 101 F.3d at 875). "This discretion, however, is not boundless." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 84 (2d Cir. 2004). District courts "must" exercise their discretion under Section 1782 "in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d at 79 (quoting *In re Application of Malev Hungarian Airlines,* 964 F.2d 97, 100 (2d Cir.1992)).

The United States Supreme Court has identified four factors that bear upon the interplay between an application for discovery and Section 1782's twin aims:

(1)     whether "the person from whom discovery is sought is a party to the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";

(2)     "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3)     whether the Section 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4)      whether the request is "unduly intrusive or burdensome".

*Intel Corp.*, 542 U.S. at 264-65.  Each of these four factors strongly supports the grant of this Application.

**First**, Dang is **not** a party to the Bermuda Action (Taylor Decl. ¶ 6; *see also* Taylor Decl. Ex. A (Operative Writ)), and thus, it is readily apparent why assistance from this Court is necessary.  *Intel Corp.*, 542 U.S. at 264; *see e.g.*, *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (finding that the "fact that respondents are non-parties weighs in favor of granting the petition since, as non-parties to the foreign proceedings, the foreign courts could not themselves order respondents to produce the requested discovery").

**Second**, there is no indication that the Supreme Court of Bermuda would reject this Court's judicial assistance (Taylor Decl. ¶ 15).  *In re Accent Delight Int'l Ltd.*, 2018 WL 2849724, at *4 (S.D.N.Y. June 11, 2018) (quoting *Mees*, 793 F.3d at 303 n.20), *aff'd*, 791 F. App'x 247 (2d Cir. 2019) ("The second factor, concerning the nature of the foreign tribunal and its receptivity to U.S. judicial assistance, favors an application absent 'proof that [the] tribunal would reject evidence obtained with the aid of § 1782.'").  Indeed, Bermuda courts previously have accepted judicial assistance from this Court under Section 1782.  *See Young v. Chem. Bank, N.A.*, 1988 WL 130929, at *1-2 (S.D.N.Y. Dec. 1, 1988), *modified on other grounds sub nom. Young v. U.S. Dep't of Just.*, 882 F.2d 633 (2d Cir. 1989) (describing the Bermuda Attorney General's solicitation of judicial assistance under Section 1782 from this Court in connection with proceedings in Bermuda).  Moreover, by urging Athene to pursue this Application (Taylor Decl. ¶ 13; *see also* Taylor Decl., Ex. E (the Bermuda Defendants' March 17, 2023 Letter) ¶ 5.11), the Bermuda Defendants have

conceded that Section 1782 is an appropriate means of collecting the Dang Discovery and are therefore in no position to contest the propriety of this Application in the Bermuda Action.

In addition, Athene is pursuing claims in the Bermuda Action grounded in the misappropriation and misuse of Athene's confidential, proprietary, and commercially sensitive documents and information, including by Dang. Thus, production of the Dang Discovery is appropriate and necessary in the Bermuda Action to understand the full scope of the Bermuda Defendants' misconduct (Taylor Decl. ¶¶ 10, 14). Furthermore, granting this Application will provide the Supreme Court of Bermuda with a clear path to considering a fulsome scope of relevant and probative evidence (*id.* ¶ 14). Because the discovery that Athene seeks is relevant to the allegations and claims at issue in the Bermuda Action, Athene anticipates that the Supreme Court of Bermuda will be receptive to this Court's assistance.

***Third***, there is no restriction in Bermuda law, United States law, or imposed by the Supreme Court of Bermuda (or otherwise) barring Athene from obtaining the Dang Discovery (*id.* ¶ 15). *See Mees*, 793 F.3d at 303 n. 20; *see, e.g.*, *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 251 (2d Cir. 2019) (finding that a district court did not abuse its discretion by concluding that petitioner's Section 1782 application did not seek to circumvent a foreign jurisdiction's discovery restrictions, where the respondent had failed to show that the foreign court prohibited the discovery sought by petitioner). Rather, to date, Athene has been unable to collect any part of the Dang Discovery from the Bermuda Defendants in the Bermuda Action because they have obstructed Athene's efforts to do so (Taylor Decl. ¶ 11).

Athene is not required to wait for the Supreme Court of Bermuda to render a decision on the discovery summons before seeking relief from this Court under Section 1782. *In re Application of Malev Hungarian Airlines*, 964 F.2d at 100 (holding that "requiring an interested person first to

seek discovery from the foreign or international tribunal is at odds with the twin purposes of 28 U.S.C. § 1782"). While the Supreme Court of Bermuda ultimately may grant Athene's discovery summons and compel the Bermuda Defendants to produce the JAMS Dang Discovery, Athene is not willing to risk further delay in the Bermuda Action, or the possibility that it will receive less-than-complete production of the JAMS Dang Discovery based on specious arguments raised by the Bermuda Defendants misinterpreting to the Bermuda Supreme Court the meaning of the confidentiality agreements from the JAMS Arbitration or the New York Action, or about the JAMS Dang Discovery not being in their possession, custody and control (*see, e.g.*, Taylor Decl. Ex. D (Bermuda Defendants' November 8, 2022 Letter) at 1, 2 (claiming that the sought-after documents are subject to confidentiality constraints and "many" of them "are not within" the Bermuda Defendants' "possession, custody and power"); *see also* Taylor Decl., Ex. E (the Bermuda Defendants' March 17, 2023 Letter) ¶ 2 (same)).

And the Bermuda Defendants have no grounds to argue that this application is inappropriate. Indeed, in contesting Athene's discovery summons in the Supreme Court of Bermuda, the Bermuda Defendants have argued that the JAMS Dang Discovery should be obtained directly from Dang through a Section 1782 application (Taylor Decl. ¶ 13; Taylor Decl., Ex. E (the Bermuda Defendants' March 17, 2023 Letter) ¶ 5.11). Thus, they concede the propriety of this Application.

Moreover, whether or not documents within the JAMS Dang Discovery are confidential, confidentiality "cannot serve to shield" those documents "from discovery." *Trib. Co. v. Purcigliotti*, 1996 WL 337277, at *3 (S.D.N.Y. June 19, 1996); *Conopco, Inc. v. Wein*, 2007 WL 1040676, at *5 (S.D.N.Y. Apr. 4, 2007); *Weissman v. Fruchtman*, 1986 WL 15669, at *19 (S.D.N.Y. Oct. 31, 1986). This is also true under English common law, upon which the Supreme

16

Court of Bermuda relies (Taylor Decl. ¶ 16).  As articulated in the Taylor Declaration, the Supreme Court of Bermuda "should not allow confidentiality of arbitration materials in any sense to stifle the ability to bring to light wrongdoing of one kind or another" (*id.* (citing *Westwood Shipping Lines Inc, Weyerhaeuser NR Company v Universal Schiffahrtsgesellschaft MBH, Michael Bremen*, [2012] EWHC 3837 (Comm)) (a copy of this opinion is attached to the Taylor Declaration as **Exhibit H**)).  In addition, the Supreme Court of Bermuda has issued a confidentiality order that would apply to Dang's production of documents for use in the Bermuda Action (*id.* ¶ 17), further obviating any potential confidentiality-based objection to this Application.

Regardless, Dang and the Bermuda Defendants' treatment of discovery produced in the JAMS Arbitration, including the JAMS Dang Discovery, which appears to be largely coextensive with the New York Dang Discovery, shows that there are no grounds for Dang (or the Bermuda Defendants) to contest this Application based on the confidentiality of arbitration proceedings. Regarding Dang, after the JAMS Arbitrator's determination, Dang reproduced the JAMS Dang Discovery in the New York Action to non-parties in the JAMS Arbitration (*id.* ¶ 11; Pesner Decl., Ex 1 (Davidian Aff.) ¶ 20); this alone precludes any argument that the confidentiality of the JAMS Arbitration shields Dang from reproducing the JAMS Dang Discovery here.

And regarding the Bermuda Defendants, Siddiqui and Cernich produced in the Bermuda Action numerous documents from the JAMS Arbitration, including every transcript from that arbitration *except* for the transcript of Dang's testimony (Taylor Decl. ¶ 9).  Apollo also has produced its entire JAMS Arbitration production, which does not include the JAMS Dang Discovery or the New York Dang Discovery, in the Bermuda Action (*id.*), confirming that there is no confidentiality-related basis related to the JAMS Arbitration for Dang to refuse to produce the JAMS Dang Discovery in the Bermuda Action.

In any event, it is highly ***unlikely*** that Dang has a personal confidentiality interest in the Dang Discovery.  Instead, it is highly ***likely*** that the Dang Discovery is composed of Athene's, Apollo's and/or Caldera's confidential information.  The Confidentiality Stipulation only covers documents that "contain trade secrets, proprietary business information, competitively sensitive information, or other information the disclosure of which would . . . be detrimental to the . . . business" of the party designating the documents as confidential, "or the business of any of that party's customers, clients, or investors or violate the privacy rights of that party and/or one of more of its employees, officers, directors, representatives, customers or clients" (Taylor Decl. Ex. C (Confidentiality Stipulation) ¶ 3).  Thus, it is unclear what within the Dang Discovery could possibly be confidential to Dang.

Athene also is requesting the production of the New York Dang Discovery, which Athene anticipates will be largely, if not almost entirely, identical to the JAMS Dang Discovery, and which does not implicate the Confidentiality Stipulation used by the Bermuda Defendants as an excuse to avoid production of the JAMS Dang Discovery.

***Fourth***, the discovery that Athene seeks is neither unduly intrusive nor burdensome. Athene is seeking discovery that Dang already has produced in the JAMS Arbitration and/or the New York Action.  Moreover, the New York Dang Discovery is likely largely a reproduction of the JAMS Dang Discovery (Taylor Decl. ¶ 11).  Thus, there is no reason to believe that these documents cannot be easily and readily produced to Athene by Dang.[5]

---

[5] This Court has ordered the production of discovery in response to applications brought under Section 1782 seeking far more burdensome discovery than that sought here, including on the grounds that the applicant had a "legitimate need for at least some of the requested materials".  *Ahmad Hamad Algosaibi & Bros. Co.*, 785 F. Supp. 2d at 439. The Dang Discovery will shed light on the Bermuda Defendants' misappropriation and use of Athene's confidential, proprietary and commercially sensitive information, and thus is directly relevant to Athene prosecuting its claims against the Bermuda Defendants in the Bermuda Action.  Therefore, Athene has a legitimate need for the Dang Discovery that outweighs whatever burden producing the Dang Discovery might impose on Dang.

## **CONCLUSION**

For the reasons set forth above and in the accompanying Taylor Declaration and Pesner Declaration, Athene respectfully requests that the Court enter an Order, in the form annexed to the Pesner Declaration as **Exhibit 2**, directing Dang to produce the Dang Discovery.


Dated:   New York, New York
         May 22, 2023

                         Respectfully Submitted,

                         FRIEDMAN KAPLAN SEILER
                           ADELMAN & ROBBINS LLP



                         /s/ Steven M. Pesner
                         Steven M. Pesner
                         Philippe Adler
                         Alexander D. Levi
                         7 Times Square
                         New York, New York  10036-6516
                         (212) 833-1112
                         spesner@fklaw.com
                         padler@fklaw.com
                         alevi@fklaw.com

                         Attorneys for Applicant
                         Athene Holding Ltd

19