UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                         :

IN RE APPLICATION OF ATHENE HOLDING   :   Misc. Case No. 23-mc-00171(JHR)
LTD FOR JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782               :

                                                                         :
------------------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

                                                      KIRSCH & NIEHAUS, PLLC
                                                      Paul R. Niehaus
                                                      950 Third Avenue, Suite 1900
                                                      New York, New York  10022
                                                      (212) 631-0223
                                                      paul.niehaus@kirschniehaus.com
                                                      *Attorneys for Respondent Ming Dang*

Dated: June 9, 2022
       New York, New York

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................................ 1
STATEMENT OF FACTS ................................................................................................................. 2
ARGUMENT ..................................................................................................................................... 6
   I.   LEGAL STANDARDS .......................................................................................................... 6
   II.  THE PROPOSED ORDER SEEKS IRRELEVANT
       INFORMATION AND IS UNDULY BURDENSOME ........................................................ 8
   III. ATHENE SHOULD BEAR THE COSTS
       OF COMPLIANCE WITH ANY SUBPOENA .................................................................. 11
CONCLUSION ................................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**CASES**

*Ahmad Hamad Algosaibi & Bros. Co. v. Std. Chartered Int'l (USA) Ltd.*,
    785 F. Supp. 2d 434 (S.D.N.Y. 2011)..................................................................................11

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) ................................................................................................. 8

*In re Edelman,*
    295 F.3d 171 (2d Cir. 2002) ................................................................................................. 7

*In re Esses*,
    101 F.3d 873 (2d Cir. 1996) ................................................................................................. 6

*In re Ex Parte Application of Kleimar N.V.*,
    220 F. Supp. 3d 517 (S.D.N.Y. 2016) .................................................................................. 7

*In re Gushlak*,
    2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011) ..................................................................... 7

*In re Kingstown Partners Master Ltd.*,
    2022 WL 1081333 (S.D.N.Y. Apr. 8, 2022).......................................................................11

*In re L. Firms of McCourts & McGrigor Donald*,
    2001 WL 345233 (S.D.N.Y. Apr. 9, 2001).........................................................................11

*In re Metallgesellschaft*,
    121 F.3d 77 (2d Cir. 1997) ................................................................................................... 6

*In re Top Matrix Holdings Ltd.*,
    2020 WL 248716 (S.D.N.Y. Jan. 16, 2002) ........................................................................ 7

*In re T-Systems Scheiz AG*,
    2020 WL 7384007 (S.D.N.Y. Dec. 16, 2020) ...............................................................8, 11

*In re Zouzar Bouka; Vision Indian Ocean S.A.*,
    -- F. Supp. 3d --, 2022 WL 15527657 (S.D.N.Y. Oct. 28, 2022) ....................................... 7

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004).............................................................................................................. 7

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
    895 F.3d 238 (2d Cir. 2018) ................................................................................................. 6

*Malev Hungarian Airlines v. United Techs. Int'l, Inc.*,
    964 F.2d 97 (2d Cir. 1992) ................................................................................................ 7

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ..................................................................................... 7, 8, 10

*Noel v. Bank of New York Mellon,*
    2011 WL 3279076 (S.D.N.Y. July 27, 2011) ..................................................................... 8

*U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
    2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012) ..................................................................... 11

**STATUTES AND RULES**

28 U.S.C. § 1782 ................................................................................................................ passim

Fed. R. Civ. P. 26 ....................................................................................................................7, 8

Fed. R. Civ. P. 45 .................................................................................................................7, 8, 11

Respondent Ming Dang, by and through his attorneys, Kirsch & Niehaus, PLLC, respectfully submits this Memorandum of Law in Opposition to the Application (the "Application") of Petitioner Athene Holding Ltd. for an order pursuant to 28 U.S.C. § 1782 in aid of a foreign proceeding.

## PRELIMINARY STATEMENT

This application represents merely the latest salvo in a multi-year campaign by Apollo Global Management, Inc. f/k/a Apollo Global Management, LLC ("Apollo") and its subsidiary Petitioner Athene Holding Ltd. ("Athene"), to prevent certain former Apollo and Athene employees from competing with Athene. For more than five years, Apollo and its related entities have spent tens of millions of dollars pursuing Imran Siddiqui, Stephen Cernich, Huan Tseng, and Respondent Ming Dang in six separate actions across four separate jurisdictions, with the sole aim of preventing their entry into the lucrative insurance space currently occupied by Athene. Most prominently, in 2018 Apollo commenced an arbitration against Siddiqui and Dang seeking $300 million in damages, and a permanent injunction against their competing with Apollo or Athene. The arbitration concluded with an award of just over $1 million to Apollo (representing a mere 0.33% of Apollo's demand), and no injunction. Undeterred, Apollo and Athene launched three additional suits against various of the former employees, in New York State Supreme Court, the Southern District of New York, and in the Supreme Court of Bermuda.

Athene now asks for this Court's assistance in that final action, seeking an order requiring Dang to produce documents for use in the Bermuda proceeding. But rather than providing a list of topics or types of documents to be produced, Athene has simply requested that the Court order the production of *all* documents previously produced by Dang in other proceedings. Indeed, apart from a single line in a footnote, Athene does not bother to justify the substance of its requests at all.

1

Because the proposed order is significantly overbroad and burdensome, and because Athene has failed to show why the requested documents are necessary or even relevant to the Bermuda action, the Court should deny the Application. Alternatively, the Court should issue a revised order, narrowly tailoring the scope of discovery to the specific claims and defenses in the foreign action, and requiring Athene to bear the costs of production.

## STATEMENT OF FACTS

Athene brings this Application in support of an action by Athene against Imran Siddiqui, Stephen Cernich, and Caldera Holdings Ltd. ("Caldera") pending in the Supreme Court of Bermuda (the "Bermuda Action").[1] The Bermuda Action represents just one of no fewer than six legal proceedings filed by Apollo and/or Athene against former employees in order to keep them from competing with Athene, including:

- *Apollo Global Management, LLC et al. v. Siddiqui & XYZ Company.*, JAMS Reference No. 1425025532 (the "First Arbitration")
- *Apollo Global Management, LLC et al. v. Siddiqui*, JAMS Reference No. 1425026462 (the "Second Arbitration")
- *Apollo Global Management, LLC et al. v. Dang, Siddiqui, & Caldera Holdings Ltd.*, (consolidated with the above arbitration prior to being assigned a Reference No.) (the "Third Arbitration")
- The Bermuda Action
- *Apollo Global Management, Inc. et al. v. Cernich & Tseng*, S.D.N.Y. Case No. 20-cv-00864-GBD (the "S.D.N.Y. Action")
- *Apollo Asset Management, Inc. et al. v. Cernich & Tseng*, Supreme Court of New York, N.Y. Co., Index No. 653234/2020 (the "New York Action").[2]

Of particular relevance to this Application, the Third Arbitration was brought in late 2018 against Siddiqui, Dang, and Caldera by Apollo, Apollo Management, L.P., Apollo Advisors VIII,

---

[1]    Styled *Athene Holdings Ltd. v. Siddiqui, Cernich and Caldera Holdings, Ltd.*, Supreme Court of Bermuda, Civil Juris. No. 2018:149. (Taylor Decl. Ex. A, the "Operative Writ".)

[2]    Niehaus Decl. ¶ 3.

2

L.P., and Apollo Advisors IX, L.P. (collectively, the "Apollo Entities").[3] In the Third Arbitration, and generally pleading as a single unit, the Apollo Entities brought claims against Dang for: (i) breach of the fiduciary duty of loyalty to all of the Apollo Entities; (ii) faithless servant to all of the Apollo Entities; (iii) breach of restrictive convents found in an equity award agreement with Apollo; (iv) breach of restrictive covenants found in a limited partnership agreement with Apollo Advisors VIII, L.P.; (v) breach of restrictive covenants found in a limited partnership agreement with Apollo Advisors IX, L.P.; (vi) forfeiture under the same limited partnership agreements; (vii) common law unfair competition against all of the Apollo Entities; (viii) fraud against all of the Apollo Entities; (ix) unjust enrichment from all of the Apollo Entities; (x) misappropriation of trade secrets of all of the Apollo Entities; (xi) conversion from all of the Apollo Entities; (xii) violation of the Computer Fraud and Abuse Act; (xiii) tortious interference with prospective business relations against all of the Apollo Entities; and (xiv) aiding and abetting Siddiqui's alleged breach of fiduciary duties to each of the Apollo Entities. (Niehaus Decl. Ex. 1, Third Arbitration Amended Statement of Claim.)

In connection with its claims in the Third Arbitration, the Apollo Entities and its affiliates promulgated sweeping discovery requests upon Dang, including (in summary): (i) all documents originating with any of the Apollo Entities or Athene; (ii) all documents or communications regarding any of the Apollo Entities or Athene; and (iii) all documents and communications relating to every aspect of any business that would potentially compete with any of the Apollo Entities or Athene. (Niehaus Decl. Ex. 2, Third Arbitration First Set of Request for Documents.) Given the breadth of the claims asserted by the Apollo Entities, almost every email, text, and

---

[3] Apollo serves as the umbrella entity for all Apollo-affiliated entities. Apollo Management, L.P. operates the daily business of Apollo, and the Advisors limited partnerships operate specific investment funds. (Niehaus Decl. ¶ 11.)

document exchanged between Dang, Siddiqui, Tseng and Cernich (among others) during the applicable time frame was at least arguably relevant to the Apollo Entities' claims. Therefore, rather than spending tens or hundreds of thousands of dollars parsing the specific responsiveness of thousands of documents and e-mails, Dang produced *all* communications and documents exchanged among the designated parties, withholding only privileged materials and a handful of obviously personal communications. (Niehaus Decl. ¶ 6.) The produced documents totaled approximately 58,000 pages. (Niehaus Decl. ¶ 7.) However, the potential relevance of these documents lay in the Third Arbitration's claims relating to Dang's relationship with the Apollo Entities – not in any claims against Dang specific to Athene. Indeed, Dang never had any affiliation with Athene. (Dang Decl. ¶ 2.) The vast majority of documents and communications produced in the Third Arbitration have nothing to do with Athene. (Niehaus Decl. ¶ 8.)

In 2020, the same Apollo Entities that were Petitioners in the Third Arbitration against Dang and Siddiqui filed suit against Steve Cernich and Huan Tseng, alleging essentially that Cernich and Tseng aided and abetted the causes of action brought against Dang and Siddiqui in the Third Arbitration, and on essentially the same facts.[4] In response to a subpoena issued by the Apollo Entities in the New York Action, and in compromise of the full range of requested documents, Dang produced all of the documents he had previously produced in the Third Arbitration. (Niehaus Decl. ¶¶ 9, 10, Ex. 3, Subpoena in New York Action.) Again, because the causes of action in the New York Action essentially mirrored those in the Third Arbitration,

---

[4] Styled *Apollo Global Management, Inc., Apollo Management, L.P., Apollo Advisors VIII, L.P., and Apollo Advisors IX, L.P. v. Stephen Cernich and Huan Tseng*, N.Y. Supreme Court, N.Y. County, Index No. 653234/2020. (Niehaus Decl., Ex. 4, New York Complaint.) According to the Complaint in the New York Action, Apollo Global Management, Inc. was formerly known as Apollo Global Management, LLC (defined herein as Apollo). (Id., fn.1.) While the Complaint in the New York Action has subsequently been amended, Dang produced documents in that case prior to the amendment. (Niehaus Decl. ¶ 10.)

virtually all of the correspondence between and among Dang, Siddiqui, Cernich, and Tseng from the applicable time period was at least arguably relevant to the claims in the New York Action, and was thus produced.

In contrast, the Bermuda Action (in aid of which Athene seeks to enlist this Court's assistance), is brought solely by Athene against Siddiqui, Cernich and Caldera, based on alleged breaches of fiduciary duty owed by Siddiqui and Cernich to *Athene* – not to any plaintiffs in the Third Arbitration or New York Action. (Taylor Decl., Ex A, Operative Writ ¶ 1.) Specifically, the operative pleading (the "Operative Writ") alleges that Siddiqui and Cernich took confidential or proprietary information of *Athene* and used it to unfairly compete with Athene. (Id. ¶ 2.) Indeed, Athene's operative pleading takes pains to clarify that the Third Arbitration and the Bermuda Action are based on different grounds:

> The [Third] Arbitration did not concern the breaches of fiduciary duty or breaches of confidence which are alleged in these proceedings, such duties being owed to the Plaintiff [Athene] and governed by and arising from Bermuda law. By contrast, the matters for consideration in the Arbitration concerned different parties and different time periods and arose under New York Law, based largely on a contract between the First Defendant [Siddiqui] and Apollo.

(Taylor Decl. Ex. A, Operative Writ ¶ 64.)

Notwithstanding the different basis and scope of the Bermuda Action, by its Application Athene seeks all documents produced by Dang and transcripts of all testimony provided by Dang in each of the Third Arbitration and the New York Action. (Pesner Decl. Ex. 2, Proposed Order.) The Proposed Order does not request documents related to any particular topic, entity, person or time frame, much less any particular topic relevant to the Bermuda Action. (Id.) The Proposed Order instead seeks *all* documents produced by Dang in a proceeding that Athene has expressly averred to the Bermuda court concerned different claims, different duties, different parties, different time frames, and different law. (Id.)

5

**ARGUMENT**

I. **LEGAL STANDARDS**

The text of 28 U.S.C. § 1782 initially requires a district court to confirm that specific jurisdictional requirements are met before considering whether to grant a Section 1782 petition. A district court possesses jurisdiction to grant a Section 1782 petition if:

> (1) ... the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) ... the discovery is for use in a proceeding before a foreign tribunal, and (3)... the application is made by a foreign or international tribunal or any interested person.

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 243 (2d Cir. 2018) (cleaned up), *citing In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996). The text of the Section further establishes that the granting of any application is discretionary:

> The district court of the district in which a person resides or is found *may* order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . .

28 U.S.C. § 1782 (emphasis added). Finally, the text specifies that any discovery be provided in accordance with the Federal Rules of Civil Procedure:

> To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782. *See Kiobel*, 895 F.3d at 243 ("even if a court has jurisdiction under the statute to grant a petition, the decision to grant it is discretionary"); *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997) ("The permissive language of § 1782 vests district courts with discretion to grant, limit, or deny discovery").

The Supreme Court has identified four factors for courts to consider in connection with Section 1782 applications:

- whether "the person from whom discovery is sought is a party to the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent as

6

- it ordinarily would is when evidence is sought from a nonparticipant in the matter arising abroad";

- "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

- whether the Section 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

- whether the application is "unduly intrusive or burdensome".

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004).

Because discovery provided pursuant to Section 1782 is to be produced "in accordance with the Federal Rules of Civil Procedure," in ruling on a Section 1782 application, "[c]ourts must also consider Rules 26 and 45 of the Federal Rules of Civil Procedure." *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016). *See also In re Zouzar Bouka; Vision Indian Ocean S.A.*, -- F. Supp. 3d --, 2022 WL 15527657, at *11 (S.D.N.Y. Oct. 28, 2022) (in considering fourth *Intel* factor of "unduly intrusive or burdensome," courts look to Rules 26 and 45); *In re Gushlak*, 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) (same); *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) (courts should evaluate whether a § 1782 request is "unduly intrusive or burdensome," by "applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."); *In re Edelman,* 295 F.3d 171, 179 (2d Cir. 2002) ("Limits may be proscribed on [§ 1782] discovery or an existing order may be quashed under Rule 26(c)."); *Malev Hungarian Airlines v. United Techs. Int'l, Inc.*, 964 F.2d 97, 102 (2d Cir. 1992) (Section 1782 and Rule 26 furnish district courts with broad discretion to impose reasonable limitations upon discovery).

Under Rule 26, the court must consider whether the information requested is "relevant" and "proportional to the needs of the case." *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at * 7 (S.D.N.Y. Jan. 16, 2002); Fed. R. Civ. P. 26(b)(1). Under Rule 45, "[w]hether a subpoena

7

imposes an 'undue burden' depends on factors including relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed." *In re Auto-Guadeloupe*, 2012 WL 4841945, at *4, *citing Noel v. Bank of New York Mellon,* 2011 WL 3279076, at *2 (S.D.N.Y. July 27, 2011). Moreover, the party seeking discovery bears the initial burden of showing relevance. *Id.*

Finally, courts are encouraged to issue "a closely tailored discovery order rather than . . . simply denying relief outright" when considering the possible burden of a Section 1782 application. *Id.*, *quoting Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995)) ("it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright"). Thus, to the extent a district court finds that a discovery request is overbroad, before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery. *Mees*, 793 F.3d at 302. *See also In re T-Systems Scheiz AG*, 2020 WL 7384007, at *1-2 (S.D.N.Y. Dec. 16, 2020) (limiting scope of subpoena sought pursuant to § 1782 in time and breadth).

II.   **THE PROPOSED ORDER SEEKS IRRELEVANT INFORMATION AND IS UNDULY BURDENSOME**

In the nineteen pages of its Memorandum of Law in support of its Application, Athene spends a total of four sentences addressing the burden imposed by its requests, and exactly *one* sentence (in a footnote) attempting to explain how the requested documents are relevant. (Pet. Mem. p. 18, and n. 5.) Federal Rules of Civil Procedure 26 and 45 each fail to make any appearance at all in Athene's Memorandum of Law. Perhaps most curiously, the proposed Order

does not even bother to request documents or communications relating to a specific topic, entity, or event, and instead bluntly seeks a blanket re-production of materials produced in other proceedings. (Pesner Decl., Ex. B, Proposed Order.) But as noted above, the documents now sought by Athene were originally produced (in the Third Arbitration) in response to a specific set of requests, in connection with a far different set of claims, relating to a different set of parties, governed by different law. The documents were re-produced in response to requests promulgated in an action (the New York Action) involving claims mirroring those of the Third Arbitration. The fact that this particular set of documents was produced in connection with claims brought by the Apollo Entities against Dang does not mean that the same universe of documents is relevant to a suit by Athene against Siddiqui and Cernich.

From a purely legal perspective, Athene has failed to meet its initial burden of showing the relevance of the documents it seeks. *See In re Application of Auto-Guadeloupe Investissement S.A., for an Order to Take Discovery Pursuant to 28 U.S.C. Section 1782*, 2012 WL 4841945, at *4 (S.D.N.Y. Oct. 10, 2012). At most, Athene has claimed that the documents it seeks are relevant to "[Siddiqui and Cernich's] misappropriation and use of Athene's confidential, proprietary and commercially sensitive information . . .." (Pet. Br. p. 18 n. 5.) But Athene makes no argument that other documents previously produced by Dang are relevant, including documents relating to Dang's duties to the Apollo Entities, documents relating to the Apollo Entities' confidential information, documents relating to communications with parties other than Siddiqui and Cernich, or documents regarding Caldera's business generally.

That Athene has not even attempted to justify the production of most of the materials it seeks is unsurprising. Even a cursory comparison of the enormous scope of documents sought by Athene versus the far narrower claims actually at issue in the Bermuda Action reveals both the

9

burdensomeness of Athene's request, as well as the irrelevancy of the vast majority of the documents it seeks.  Again, the Bermuda Action seeks liability against: (i) Siddiqui and Cernich for (ii) taking and using Athene confidential information, (iii) in violation of Siddiqui and Cernich's duties to Athene.[5]  (Taylor Decl. Ex. A, Operative Writ.)  In contrast, the Third Arbitration sought liability against: (i) Dang, for (ii) taking and using the Apollo Entities confidential information, (iii) in violation of Dang's duties to the Apollo Entities. (Niehaus Decl. Ex. 1, Third Arbitration Amended Statement of Claim.)  The claims in the Third Arbitration were thus very different both in focus and in overall scope from the claims in the Bermuda Action. For example, because the claims in the Third Arbitration included, among other things, a claim under the faithless servant doctrine, virtually all of Dang's activities with Caldera were relevant to the claims in the Third Arbitration.  (Id.)  Tens of thousands of pages of documents produced in the Third Arbitration have nothing to do with the claims at issue in the Bermuda Action.

At the same time, Dang is mindful of the Second Circuit's admonition that courts consider issuing a "closely tailored" discovery order rather than denying relief outright.  *Mees*, 793 F.3d at 302; *Euromepa*, 51 F.3d at 1101.  Subject to Section III below, Dang is prepared to produce documents specifically related to Athene information (if any) that may have been shared with Siddiqui and Cernich during the relevant time frame, and is further prepared to work with the Court and/or Athene in determining the scope of such production and the protocols to govern it.

---

[5]     While Caldera is named as a defendant in the Bermuda Action, the Operative Writ makes clear that its liability is premised solely on its alleged status as an "agent and/or nominee" of Siddiqui and Cernich, and not in its own right.  (Taylor Decl. Ex. A, Operative Writ ¶¶ 13, 16, 24, 38, 52 and *ad damnum* (f).)

10

### III. ATHENE SHOULD BEAR THE COSTS OF COMPLIANCE WITH ANY SUBPOENA

Finally, in issuing a subpoena or order pursuant to § 1782, courts consider the costs of compliance as they would a subpoena issued pursuant to Fed. R. Civ. P. 45. *See Ahmad Hamad Algosaibi & Bros. Co. v. Std. Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011); *see also In re T-Systems Scheiz AG*, 2020 WL 7384007, at *2 (S.D.N.Y. Dec. 16, 2020) ("In evaluating the allocation of costs under Section 1782, the Court can look to cases considering similar issues under Fed. R. Civ. P. 45.").

Determining each party's share of the cost of compliance in such circumstances "turns on three factors: (1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation is of public importance." *In re T-Systems Scheiz AG*, 2020 WL 7384007, at *2; *see also In re Kingstown Partners Master Ltd.*, 2022 WL 1081333, at *7 (S.D.N.Y. Apr. 8, 2022).[6] Where two or more factors align, courts frequently shift the costs of compliance to the applicant, rather than the responding party. *See Algosaibi*, 785 F. Supp. 2d at 439 ("[I]n view of the potentially substantial burdens on respondents that this grant entails, the Court further orders AHAB to bear 100% of respondents' costs of producing the discovery to AHAB."); *In re L. Firms of McCourts & McGrigor Donald*, 2001 WL 345233, at *3 (S.D.N.Y. Apr. 9, 2001) ("Respondents will be required to produce the requested documents only after receiving in advance the reasonably estimated costs of production, including the attorney's fees to be incurred by respondents in reviewing and selecting the documents to be produced."); *In re Kingstown Partners Master Ltd.*, 2022 WL 1081333, at *7 (ordering that the applicant bear 50% of the nonparty's costs of production).

---

[6] Litigation is not of public important where it "involves a purely private dispute." *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2012 WL 5395249, at *4 (S.D.N.Y. Nov. 5, 2012).

Here, Dang has no interest in the outcome of the Bermuda Action; Athene, a multi-billion dollar entity, is in a far better position to bear the burdensome costs of complying with this subpoena; and the litigation concerning a private breach of fiduciary duty dispute is not of any public importance. Thus, should the Court grant the Application, in whole or in part, Dang respectfully requests that Athene bear 100% of the costs of review and production and review, including reasonable attorneys' fees.

## CONCLUSION

For the foregoing reasons, Respondent Dang respectfully requests that the Application as proposed be denied, and that any subpoena or order issued pursuant to the Application be narrowly tailored to seek only documents specifically relevant to the Bermuda Action.

Dated: June 9, 2023
New York, New York

KIRSCH & NIEHAUS, PLLC

*s/ Paul R. Niehaus*
Paul R. Niehaus
950 Third Avenue, Suite 1900
New York, New York 10022
(212) 631-0223
paul.niehaus@kirschniehaus.com
*Attorneys for Respondent Ming Dang*