UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ATHENE HOLDING LTD.,

                          Applicant,

         -v-

MING DANG,

                          Respondent.

CIVIL ACTION NO. 23 Misc. 171 (JHR) (SLC)

**OPINION & ORDER**[1]

**SARAH L. CAVE,** United States Magistrate Judge.

## I.   INTRODUCTION

Applicant Athene Holding Ltd. ("Athene") has applied, pursuant to 28 U.S.C. § 1782, for leave to take discovery from Respondent Ming Dang ("Mr. Dang") in this Court for use in a civil action in Bermuda (the "Bermuda Action") to which Mr. Dang is not a party.  (See ECF No. 1 (the "Application")).  Athene seeks an order requiring Mr. Dang to produce documents and testimony from New York proceedings brought by Athene's parent company, Apollo Global Management, Inc., formerly known as Apollo Global Management, LLC ("Apollo").  (See id.; ECF Nos. 3 at 1; 15 at 5).  Mr. Dang opposes the Application and asks the Court to shift to Athene any costs he

---

[1] Historically, this Court has treated applications made pursuant to 28 U.S.C. § 1782 as non-dispositive motions that Magistrate Judges have the authority to hear and determine by order, on referral, pursuant to  28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72.  See In re Crédito, No. 22 Misc. 273 (JGK) (BCM), 2023 WL 5016497, at *1 n.1  (S.D.N.Y. May 24, 2023); In re Ulmans, No. 23 Misc. 23 (GHW) (VF), 2023 WL 3853703, at *2 (S.D.N.Y. Apr. 20, 2023) (collecting cases), adopted by 2023 WL 3412769 (S.D.N.Y. May 12, 2023).  The Second Circuit recently explained, however, that a Magistrate Judge's order denying a § 1782 application was "nonfinal," and remanded the order to the district court to be "treated as a report and recommendation" for which "appropriate proceedings can be held."  Associacão dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp., No. 22-2865, 2023 WL 3166357, at *1 (2d Cir. Mar. 28, 2023).  Here, because the Court grants the application in part and orders the parties to engage in further discovery and proceedings in this Court, the ruling is thus neither final nor dispositive, such that an Opinion & Order, as opposed to a Report & Recommendation, is appropriate.  See Fed. Republic of Nigeria v. VR Advisory Servs., Ltd., No. 21 Misc. 7 (JGK), 2023 WL 2477889, at *1 (S.D.N.Y. Mar. 13, 2023).  The parties retain the ability to seek review by the Honorable Jennifer H. Rearden.  See Fed. R. Civ. P. 72(a).

incurs in producing discovery.  (ECF No. 15).  For the reasons set forth below, the Application is
GRANTED IN PART and DENIED IN PART.

## II.   BACKGROUND

### A.  Prior Proceedings

In May 2018, Apollo commenced an arbitration against Imran Siddiqi ("Mr. Siddiqi") (the
"First Arbitration"), a former member of Athene's Board of Directors whom Apollo alleged
engaged in "wrongful use and disclosure of Apollo's 'Confidential information'" in violation of a
settlement agreement between Mr. Siddiqi and Apollo.  (ECF Nos. 3 at 8; 5-2 at 3).  Also in
May 2018, Athene commenced the Bermuda Action in the Supreme Court of Bermuda against
Mr. Siddiqi, Stephen Cernich ("Mr. Cernich"), and Caldera Holdings Ltd. ("Caldera") (together, the
"Bermuda Defendants"), alleging, inter alia, breach of fiduciary duty and misappropriation of
trade secrets. (ECF Nos. 3 at 5; 5-1).  Mr. Cernich is a former director and senior officer of Athene,
and Caldera is a Bermuda company with a "business plan [] similar to that of Athene."
(ECF Nos. 3 at 5; 5-2 at 7).  The Bermuda Action remains ongoing.  (See ECF Nos. 1; 3).

In July 2018, Mr. Siddiqi commenced an arbitration against Apollo (the "Second
Arbitration") seeking recovery of his fees in the First Arbitration.  (ECF No. 5-2 at 3).  Shortly
thereafter, JAMS—the organization providing the arbitration services—consolidated the First
Arbitration with the Second Arbitration.  (Id. at 3–4).  In November 2018, Apollo commenced an
arbitration against Mr. Siddiqi, Mr. Dang, and Caldera (the "Third Arbitration"), in which Apollo
alleged that Mr. Dang, a former Apollo employee, "violated his contractual and fiduciary duties
by joining [Mr.] Siddiqi and his colleagues at Caldera by sharing Apollo's confidential information
with them and aiding in their scheme to usurp what is alleged to be an Apollo corporate

opportunity." (Id. at 5).  The Third Arbitration was consolidated with the First and Second Arbitrations (together, the "Arbitrations"), which then proceeded together before the same arbitrator (the "Arbitrator").  (Id.)  Mr. Dang was deposed and testified at arbitration hearing. (ECF No. 3 at 7).

In July 2020, Apollo sued Mr. Cernich and Huan Tseng ("Mr. Tseng") in New York Supreme Court (the "N.Y. Action"), alleging that Mr. Cernich and Mr. Tseng played "critical roles in substantially assisting and actively concealing the breaches of fiduciary duty and fraud perpetrated against Apollo by two former Apollo employees, [Mr.] Siddiqi and [Mr.] Dang." Complaint ¶ 1, Apollo Glob. Mgmt., Inc. v. Cernich, No. 653234/2020 (Sup. Ct. N.Y. Cnty. July 20, 2020), NYSCEF Doc. No. 2.[2]  Mr. Dang was deposed in the N.Y. Action.  (ECF No. 3 at 7).

As relevant to this Application, discovery in the Arbitrations was, according to the Arbitrator, "difficult to say the least," and required the Arbitrator to "rule on countless discovery disputes," although it is difficult to discern whether Mr. Dang was involved in those discovery disputes.  (ECF No. 5-2 at 3).  In response to discovery requests in the Arbitrations, Mr. Dang, "rather than spending tens or hundreds of thousands of dollars parsing the specific responsiveness of thousands of documents and e-mails, produced all communications and documents exchanged among the designated parties, withholding only privileged materials and a handful of obviously personal communications."  (ECF No. 15 at 7–8).  Mr. Dang approximates the size of his production in the Arbitrations to be 58,000 pages.  (Id. at 8).  Although Mr. Dang

---

[2] In January 2020, prior to commencing the N.Y. Action, Apollo sued Mr. Cernich and Mr. Tseng in this Court invoking this Court's diversity jurisdiction, an action that was dismissed without prejudice by stipulation due to lack of complete diversity.  See Stipulation of Dismissal, Apollo Glob. Mgmt. Inc. v. Cernich, No. 20 Civ. 864 (GBD) (S.D.N.Y. June 18, 2020), ECF No. 31.

was not a party to the N.Y. Action, Apollo served him with a subpoena for documents, and Mr. Dang "[re]produced all of the documents he had previously produced in the [Arbitrations]." (Id.)

B. **The Application**

On May 22, 2023, Athene filed the Application seeking an order requiring Mr. Dang to produce to Athene for use in the Bermuda Action (i) his complete productions from the Arbitrations and N.Y. Action, and (ii) transcripts of testimony he gave in the Arbitrations and N.Y. Action. (ECF Nos. 1; 3 at 5) (the "Dang Materials"). Athene has "repeatedly" sought the production of the Dang Materials from the Bermuda Defendants in the Bermuda Action, but they have refused to produce the Dang Materials, citing a confidentiality stipulation between Mr. Siddiqi and Apollo in the Arbitrations. (ECF No. 3 at 13). Athene also filed a "discovery summons" in the Bermuda Action seeking to compel the Bermuda Defendants to disclose the Dang Materials, which the Bermuda Defendants have opposed and remains pending. (Id. at 14).

Athene argues that the Bermuda Action and prior proceedings arise from the "same core events and conduct" such that the Dang Materials are directly relevant to its claims in the Bermuda Action, and that granting the Application would not unduly burden Mr. Dang. (Id. at 17–22 & n.5; ECF No. 21 at 6–13). Athene asserts that the claims brought in the Bermuda Action and in the prior proceedings "arise out of the same misappropriation and use of Apollo's and Athene's confidentiality, proprietary, and commercially sensitive documents and information that was at issue in the [Arbitrations] and for which [Mr.] Siddiqui and [Mr.] Dang were found liable therein, and that is at issue in the Bermuda Action." (ECF No. 21 at 8–9). For example, Athene alleges that Mr. Dang was "an essential part of [Mr.] Siddiqui's plan," to misappropriate confidential

information from Athene, such that the information he possessed and produced in the Arbitrations and N.Y. Action directly bears on the claims in the Bermuda Action. (Id. at 6).

Mr. Dang opposes the Application on the grounds that most of the Dang Materials are not relevant to the claims in the Bermuda Action and that production of the Dang Materials would be unduly burdensome. (ECF No. 15 at 12–14). He notes that he: (i) is not a party to the Bermuda Action; (ii) is a former employee of Apollo, not Athene; (iii) produced voluminous discovery to Apollo in the Arbitrations and N.Y. Action brought by Apollo; and (iv) gave testimony in those proceedings in connection with claims brought by Apollo, not Athene. (Id. at 5–14). Mr. Dang attests that he has "never had any affiliation with Athene." (ECF No. 13 ¶ 2). Mr. Dang argues that these differences, and differences between the claims in the Bermuda Action and the claims in the Arbitrations and N.Y. Action, render a request for a blanket reproduction of the Dang Materials overbroad and inappropriate. (ECF No. 15 at 12–14). Provided that the Court requires Athene to bear the cost of production, he is "prepared to produce documents specifically related to Athene information (if any) that may have been shared with [Mr.] Siddiqi and [Mr.] Cernich during the relevant time frame," and requests that any order granting the Application be narrowly tailored to documents "specifically relevant to the Bermuda Action." (Id. at 14, 16).

Athene contends, in its reply, that Mr. Dang should have to bear the cost of production. (ECF No. 21 at 13–14).

### III.   DISCUSSION

#### A. Legal Standard

Under 28 U.S.C. § 1782(a), a federal district court may order any person who "resides or is found" in the district "to produce a document or other thing for use in a proceeding in a foreign

international tribunal . . . upon the application of any interested person."  The party making the application must demonstrate the following statutory requirements:  "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person."  Guo v. Deutsche Bank Sec., 965 F.3d 96, 102 (2d Cir. 2020).

Provided that the statutory requirements are met, the court is "free to grant discovery in is discretion."  Optimal Invs. Servs., S.A. v. Berlamont, 773 F.3d 456, 460 (2d Cir. 2014).[3]  Although the district court's discretion is broad, it must be exercised "in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'"  Mangouras v. Boggs, 980 F.3d 88, 97 (2d Cir. 2020).  The Supreme Court has identified four discretionary factors (the "Intel Factors") that a court considers when ruling on a § 1782 application:  "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for Section 1782(a) aid generally is not as apparent; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome."  Id. at 97–98 (citing Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264–65 (2004)).

---

[3] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

The fourth <u>Intel</u> Factor—whether the request is "unduly intrusive or burdensome"—is measured by the standards of Rule 26 of the Federal Rules of Civil Procedure.  <u>In re Application XPO Logistics, Inc.</u>, No. 15 Misc. 205 (LGS),  2017 WL 6343689, at *4  (S.D.N.Y.  Dec. 11, 2017) (citing <u>Mees v. Buiter</u>, 793 F.3d 291, 302 (2d Cir. 2015)).  As applied to § 1782 applications, Rule 26 "contemplates that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." <u>Associação dos Profissionais dos Correios v. Bank of N.Y. Melon. Corp.</u>, No. 22 Misc. 132 (RA) (KHP), 2022 WL 4955312, at *8 (S.D.N.Y. Oct. 4, 2022), <u>remanded on other grounds by</u> 2023 WL 3166357.  The "proportionality analysis depends on the relevance of the information sought—and, in the case of a § 1782 petition, relevance is assessed with regard to the foreign proceeding." <u>Catalyst Managerial Servs., DMCC v. Libya Africa Inv. Portfolio</u>, 680 F. App'x 37, 39 (2d Cir. 2017) (summary order).

    **B.**  <u>**Application**</u>

        **1.**  <u>**The statutory requirements are met.**</u>

Athene argues that it has met the § 1782 statutory requirements, which Mr. Dang does not meaningfully dispute.  (ECF Nos. 3 at 15–17; 15; 21 at 5).  The Court finds that the statutory requirements have been met:  (1) Mr. Dang resides, or is found, in the Southern District; (2) Athene seeks the Dang Materials for use in the Bermuda Action, a foreign proceeding; and (3) Athene is an interested party to the Bermuda Action because it is the plaintiff in the Bermuda Action.  (<u>See</u> ECF Nos. 4 ¶ 4; 5 at 15–17; 21 at 5).

**2.** __The discretionary factors favor granting the Application in part.__

Athene argues that each of the <u>Intel</u> Factors militate in favor of granting the Application. (ECF No. 3 at 17–22).  Because Mr. Dang does not contest that the first three <u>Intel</u> Factors favor granting the Application (ECF No. 15 at 12–14), the Court focuses on the fourth factor.

As noted, the Court assesses the fourth <u>Intel</u> Factor under Rule 26.  (<u>See</u> § III.A, <u>supra</u>). Mr. Dang's sole argument is that, under the fourth <u>Intel</u> Factor, the Court should not order the production of the entirety of the Dang Materials because they contain "irrelevant information," rendering the requested relief overbroad and unduly burdensome.  (ECF No. 15 at 12–14). Mr. Dang maintains that the claims and defenses in the Bermuda Action are factually distinct from those in the Arbitrations and N.Y. Action, rendering a blanket reproduction of materials from those proceedings for use in the Bermuda Action inappropriate.  (<u>Id.</u>)  Athene characterizes Mr. Dang's argument as a "[g]eneral and conclusory objection[]," and argues that the Dang Materials are squarely relevant to the claims in the Bermuda Action, emphasizing the similarity of the factual and legal issues notwithstanding that they involve different parties.  (ECF No. 21 at 6–13). Athene contends that production of the Dang Materials would not be overly burdensome, given that Mr. Dang has already produced the bulk of the materials in the Arbitrations and then again in the N.Y. Action.  (ECF Nos. 3 at 22; 21 at 5–6, 11–12).

Initially, the Court agrees with Athene that production of the Dang Materials would not impose an undue burden on Mr. Dang.  Indeed, Mr. Dang admits that, in connection with discovery sought from him in the Arbitrations, "rather than spending tens or hundreds of thousands of dollars parsing the specific responsiveness of thousands of documents and e-mails, [he] produced <u>all</u> communications and documents exchanged among the designated parties."

(ECF No. 15 at 8).  Mr. Dang further admits that, in response to subpoena issued in the N.Y. Action, he reproduced "all of the documents he had previously produced in the [] Arbitration[s]."  (Id.) Apart from arguments concerning relevance (addressed below), Mr. Dang does not articulate why doing so again here would constitute an undue burden, whereas previously he was able to do so to relieve that same burden.

The Court agrees with Mr. Dang, however, that the Application is overbroad and not narrowly-tailored to seek information relevant to Athene's claims in the Bermuda Action.  Athene requests all of the documents Mr. Dang produced in the Arbitrations and N.Y. Action, and all of the testimony he gave in those cases, but does not state with specificity how the Dang Materials will bear on its claims in the Bermuda Action.  Indeed, Athene devotes just part of one footnote in its opening brief to the relevance of the documents it is requesting:  "The Dang Discovery will shed light on the Bermuda Defendants' misappropriation and use of Athene's confidential, proprietary and commercially[-]sensitive information, and thus is directly relevant to Athene prosecuting its claims against the Bermuda Defendants in the Bermuda Action." (ECF No. 3 at 22 ¶ 5).  Apart from this statement and other generalized statements in its reply as to the relevance of the Dang Materials (id.; ECF No. 21 at 7–11)—more than 58,000 pages of material—Athene does not provide a justification to require production of all of the Dang Materials, as opposed to a narrowly-tailored request for documents specifically relevant to its claims in the Bermuda Action.

Athene highlights factual similarities between the Bermuda Action and the Arbitrations and N.Y. Action. (ECF No. 21 at 7–11).  Centrally, Athene argues that these proceedings stem from the same allegations that former employees of Apollo and/or Athene misappropriated their

former employer's information in order to gain a competitive advantage.  (See id.).  Specific to

Mr. Dang, Athene notes that Apollo claimed in the Arbitrations that Mr. Dang misappropriated

both Apollo's and Athene's confidential information, rendering the fact pattern there similar to

the Bermuda Action.  (See id. at 9).  While the Court agrees that these proceedings appear to be

similar in nature and stem from related underlying facts, this does not compel the conclusion that

every document Mr. Dang produced in the prior cases and all the testimony he gave is relevant to

the claims asserted in the Bermuda Action.  Further, Athene's argument that "[Mr.] Dang fails to

identify any specific category of documents that are not relevant" (id. at 11) does not establish

that that the Dang Materials are all relevant to the Bermuda Action.  Athene—not Mr. Dang—

bears the initial burden to establish that the documents and information it seeks are relevant to

its claims in the Bermuda Action and that its request is proportional to the needs of that case.

See, e.g., Azime v. Handjani, No. 21 Misc. 501 (PGG), 2022 WL 2788400, at *8 (S.D.N.Y.

July 15, 2022).  Athene has not yet met that burden as to the entirety of the Dang Materials.

### 3.  The appropriate scope of discovery to be produced

The Second Circuit has instructed that "it is far preferable for a district court to reconcile

whatever misgivings it may have about the impact of its participation in the foreign litigation by

issuing a closely tailored discovery order rather than by simply denying relief outright."  Mees,

793 F.3d at 302.  Thus, where, as here, the Court finds that discovery sought under § 1782 is

overbroad, "before denying the application it should ordinarily consider whether that defect

could be cured through a limited grant of discovery."  Id. at 302; see, e.g., In re Petition of the Fed.

Republic of Nigeria, No. 21 Misc. 7 (JGK) (VF), 2022 WL 4234556, at *6 (S.D.N.Y. Sept. 14, 2022);

Pfaff v. Deutsche Bank AG, No. 20 Misc. 25 (KPF), 2020 WL 3994824, at *12 (S.D.N.Y. July 15, 2020).

Accordingly, particularly in light of Mr. Dang's representation that he is willing to produce documents and information that are "specifically related to Athene information (if any) that may have been shared with [Mr.] Siddiqui and [Mr.] Cernich during the relevant time frame" (ECF No. 15 at 14), the parties shall meet and confer to determine which documents and testimony among the Dang Materials relate to the Bermuda Action.

### IV.    CONCLUSION

For the reasons set forth above, the Application is GRANTED IN PART and DENIED IN PART, as follows:

1. Athene is entitled to production of the Dang Materials to the extent they are relevant to its claims in the Bermuda Action.

2. By **September 1, 2023**, the parties shall meet and confer to discuss and determine what categories of documents and/or testimony within the Dang Materials are relevant to Athene's claims in the Bermuda Action.

3. By **October 2, 2023**, Mr. Dang shall review the Dang Materials and produce responsive documents to Athene.

4. If the parties reach an impasse with respect to the above, either party may file a letter on the docket seeking a discovery conference with the Court, which will be briefed pursuant to the Court's Individual Practices, Rule II(C).

5. A telephone status conference is scheduled for **Wednesday, October 11, 2023 at 10:00 a.m.**, on the Court's conference line.  The parties are directed to call: (866) 390-1828;

access code:  380-9799, at the scheduled time.  At the conference, the parties shall be prepared to discuss the status of the production and whether Mr. Dang is entitled to contribution from Athene for costs and fees incurred in connection with the production.

Dated:      New York, New York
             August 21, 2023

**SARAH L. CAVE**
**United States Magistrate Judge**